## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

-------------------------------------------------------------x

NADIYA NARIMANOVNA
CHERKASOVA,

                Plaintiff,

    - against -

THE UNITED STATES DEPARTMENT OF
STATE,
    2201 C Street NW
    Washington, D.C. 20520

MARCO A. RUBIO,
    in his official capacity as
    Secretary of the United States
    Department of State
    2201 C Street NW
    Washington, D.C. 20520

THE UNITED STATES DEPARTMENT OF
STATE, OFFICE OF ECONOMIC
SANCTIONS POLICY AND
IMPLEMENTATION
    2201 C Street NW, Suite 4657
    Washington, D.C. 20520

AARON FORSBERG,
    in his official capacity as
    Director of the
    United States Department of State
    Bureau of Economic and Business Affairs
    Office of Economic Sanctions Policy
    & Implementation
    2201 C Street NW, Suite 4657
    Washington, D.C. 20520

Case No. 26-CV-1414

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

1

THE UNITED STATES DEPARTMENT OF          :
THE TREASURY,                            :
    1500 Pennsylvania Ave. NW          :
    Washington, D.C. 20220             :
                                       :
SCOTT K. H. BESSENT,                     :
    in his official capacity as        :
    Secretary of the United States     :
    Department of the Treasury         :
    1500 Pennsylvania Ave. NW          :
    Washington, D.C. 20220             :
                                       :
THE UNITED STATES DEPARTMENT             :
OF THE TREASURY, OFFICE OF FOREIGN       :
ASSETS CONTROL,                          :
    1500 Pennsylvania Ave. NW-Annex    :
    Washington, D.C. 20220             :
                                       :
    and                                :
                                       :
BRADLEY T. SMITH,                        :
    in his official capacity as        :
    Director of the United States      :
    Department of the Treasury         :
    Office of Foreign Assets Control   :
    1500 Pennsylvania Ave. NW-Annex    :
    Washington, D.C. 20220             :
                                       :
          Defendants.             :
----------------------------------------------------------- x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Nadiya Narimanovna Cherkasova (hereinafter, "Plaintiff" or "Ms. Cherkasova") brings this Complaint for Declaratory and Injunctive Relief against Defendants, the United States Department of State (the "State Department"), its Secretary Marco Rubio, the U.S. Department of State's Office of Economic Sanctions Policy and Implementation ("OESPI"), its Director Aaron Forsberg, along with the U.S. Department of the Treasury, its Secretary Scott Bessent, the U.S. Department of the Treasury's Office of

Foreign Assets Control ("OFAC"), and OFAC's Director Bradley T. Smith, and in support of her Complaint alleges:

## INTRODUCTION

1.    This lawsuit arises from the Defendants' designation of Plaintiff as a Specially Designated National ("SDN"), and Defendants' continued and unlawful failure to adjudicate Plaintiff's request to rescind her designation as an SDN and remove her name from the List of Specially Designated Nationals and Blocked Persons (the "SDN List").

**A.    Background**

2.    Plaintiff was designated in April 2022 solely because she served as a member of the Executive (Management) Board of Bank Otkritie Financial Corporation, a Russian financial institution that had itself been designated earlier that year.  Plaintiff resigned from that position effective December 31, 2022. Four years after her designation, and more than three years after she severed the only relationship that formed the basis for her designation, Defendants continue to block her interests without explanation and without adjudicating her petition for removal.

3.    In this Complaint, Plaintiff asserts three claims.  First, Defendants are treating Plaintiff differently than similarly situated petitioners under the same administrative process. Second, Defendants are unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List in violation of the Administrative Procedure Act ("APA"). Lastly, Defendants are acting arbitrarily and capriciously in violation of the APA as there is no factual basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

4.      Executive Order 14024 ("E.O. 14024"), issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), authorizes the blocking of certain persons determined to operate in specified sectors of the Russian Federation economy or to hold specified leadership roles in designated entities. Plaintiff was not designated for engaging in misconduct, financing unlawful activity, or influencing Russian government policy. Rather, she was designated under the "leader, official, senior executive officer, or member of the board of directors" prong based solely on her service on the board of Bank Otkritie.

5.      Plaintiff resigned from Bank Otkritie effective December 31, 2022, resigning as soon as she fulfilled her contractual obligations to the bank.

6.      Ms. Cherkasova's resignation is documented, publicly reported, and undisputed.  A copy of her resignation was provided to OFAC in Plaintiff's initial petition, filed on May 23, 2025, and subsequently provided in Plaintiff's response on August 19, 2025 to OFAC's questionnaire. Since her resignation over three years ago, she has not been employed in the Russian financial sector, has not served on the board of any financial institution, and has not engaged in any activity that would independently qualify her for designation under E.O.14024.

7.      OFAC has repeatedly stated that the purpose of sanctions is "not to punish, but to bring about a positive change in behavior."  If Plaintiff cannot be removed from the SDN List based on her resignation from Bank Otkritie, then there is effectively nothing she can do to end her status as a sanctioned individual because she has already terminated the sole basis for her designation.  If course correction carries no prospect of removal, then the sanctions regime ceases to function as a mechanism for behavioral change and instead operates as a system of indefinite punishment.

**B.     Defendants are treating Plaintiff differently than similarly situated petitioners under the same administrative process**

8.      When Defendants designated Plaintiff, certain legal protections attached to Defendants' actions under the APA and the U.S. Constitution.  Defendants may not deprive those affected by their actions of due process and equal protection, including a meaningful opportunity to respond to government action and equal treatment to those similarly situated.

9.      OFAC has delisted numerous other similarly situated individuals and entities designated as SDNs under E.O. 14024.  For example, Ms. Cherkasova's former Bank Otkritie colleagues Mr. Anatoly Karachinskiy, Ms. Elena Titova, Mr. Andrey Golikov, and Mr. Paul Goldfinch, all former supervisory members of Bank Otkritie who had already resigned from their positions before being sanctioned by the United States on April 20, 2022, have been removed from the SDN List in 2023.

10.     There is also a clear established precedent of OFAC delisting parties who resigned from the positions underlying the basis of their designations after their designation.

a.  On April 3, 2026, Ms. Cherkasova's former colleague Mr. Mikhail M. Zadornov, who served as President of Bank Otkritie, and like Ms. Cherkasova left the bank on December 31, 2022, was removed from the SDN List.  In addition, Plaintiff's former Bank Otkritie colleagues Anatoly Karachinskiy, Elena Titova, Andrey Golikov, and Paul Goldfinch — all former supervisory members of Bank Otkritie who resigned from their positions — have been removed from the SDN List after demonstrating that they resigned from their respective positions at the bank.

b. Ms. Evgeniya Tyurikova, who was designated on February 24, 2023, head of Sberbank private banking, was removed from the SDN List on March 18, 2026.

c. Ms. Alexandra Y. Buriko, who was designated on May 8, 2022, for being a board member of Public Joint Stock Corporation Sberbank, was removed from the SDN List on December 31, 2025.

d. Mr. Alexey Panferov and Mr. Alexey Fisun, both of whom were designated on March 24, 2022 for holding positions on the Executive Board of the Open Joint Stock Company Sovcombank, were removed from the SDN List on July 8, 2024 and January 31, 2024, respectively, after resigning their positions.

e. Ms. Natalya Alymova, a former member of the executive board of PJSC Sberbank of Russia before resigning her position, was fully removed from the SDN List on September 14, 2023.

**C.    Defendants are unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List in violation of the APA**

11.    It has now been nearly one year since Plaintiff submitted her petition for reconsideration, which presented Defendants with conclusive evidence that she resigned from Bank Otkritie since her designation onto the SDN List, thereby negating the sole basis for her designation.  Excepting the sole questionnaire Plaintiff received on June 17, 2025, which she responded to within 60 days, the only other communication Plaintiff has received from Defendants about her petition are standard responses from anonymous senders, assuring Plaintiff that Defendants are "diligently reviewing the application."

12.    To date, Defendants have provided no substantive response to Plaintiff's numerous requests for timely adjudication despite Plaintiff's full cooperation.  Plaintiff responded within the required timeframe to OFAC's questionnaire. This is despite this questionnaire asking about information that is both irrelevant and unnecessary, making transparent Defendants' attempt to either delay making any decision on her application or fish for information that may warrant designation on other grounds.

**D.    Defendants are acting arbitrarily and capriciously in violation of the APA**

13.    Nevertheless, Defendants have clearly failed to adjudicate her petition for removal, which constitutes an unreasonable delay in violation of the APA.  Defendants' extraordinary delay in adjudicating Plaintiff's petition for reconsideration stands in stark contrast to the simplicity of the question before them.  In her petition for reconsideration of May 23, 2025, Plaintiff included a copy of the bank's order on the termination of her employment, along with copies of news articles that reported her resignation.  This documentary evidence supports the argument that keeping her on the SDN List is unwarranted and constitutes arbitrary and capricious action.

14.    Under the binding precedents of this Court, Defendants are required to treat similarly situated parties similarly pursuant to the same administrative process.  Defendants must then adjudicate Plaintiff's matter in a similar manner to other similarly situated petitioners, or, at a minimum, provide some explanation as to why Plaintiff has been treated differently.

15.    There is simply no reason to keep Plaintiff on the SDN List, so Defendants have simply chosen to effectively ignore her in complete disregard of the fact that the basis

on which she was designated had been moot for over two years before the delisting petition was even submitted to OFAC.

**E.    Plaintiff's designation is resulting in continuing harm**

16.    Defendants' failure to adjudicate Plaintiff's petition – which, in effect, amounts to a decision to deny the petition – has caused, and continues to cause, Plaintiff significant personal and financial harm.  As an SDN, Plaintiff's interests in property that may be subject to U.S. jurisdiction can be blocked, and she risks losing assets not subject to U.S. jurisdiction.  She has been effectively barred from the international financial system, unable to access banking services abroad, pursue professional opportunities outside Russia, or fully participate in international nonprofit initiatives related to women's entrepreneurship and economic empowerment—work to which she has devoted substantial time for nearly two decades.

17.    Moreover, her SDN status has had collateral effects on her minor children, who have become the unintended victims of these sanctions. Specifically, an international school in the United Arab Emirates recently decided to terminate her children's educational contracts for the upcoming academic year, and a Swiss school decided to freeze the offer of admission due to Ms. Cherkasova' s sanctioned status and reassessed school risks. This constant upheaval not only disrupts their emotional well-being but also creates uncertainty for their future, severely compromising their future academic and professional advancement. The impact is particularly acute because the children have been educated exclusively in English in international schools since early childhood. Having never undergone schooling in the Russian language, they lack the academic foundation to integrate into the Russian

educational system. Consequently, a transition to a Russian-speaking environment would be entirely foreign to them, creating profound disruption to their education.

18.     Accordingly, Plaintiff brings this action to seek relief against the continued failure of the Defendants to adhere to their stated policies and remedy their inaction by issuing a decision on her petition.

## JURISDICTION AND VENUE

19.     This action arises under the U.S. Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

20.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

21.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

22.     Plaintiff Nadiya Narimanovna Cherkasova, a citizen of Russia, was a member of the executive board at Bank Otkritie from 2017 until her resignation became effective on December 31, 2022.  She currently lives between Russia and the United Arab Emirates and

does not hold any positions in the government or the financial sector of the Russian Federation.

23.   Defendant State Department is a department of the United States federal government that manages the United States' relationships with foreign states and institutions and sets U.S. foreign policy.  The State Department is responsible for designating Plaintiff pursuant to E.O. 14024.  The State Department is located at 2201 C Street NW, Washington, D.C. 20520.

24.   Defendant Marco A. Rubio is the Secretary of the United States Department of State.  Secretary Rubio is sued in his official capacity.

25.   Defendant the OESPI is a federal agency within the United States Department of State's Bureau of Economic and Business Affairs.  The OESPI has purported to process Plaintiff's Petition for Removal.  The OESPI is located at 2201 C Street NW, Suite 4657, Washington, D.C. 20520.

26.   Defendant Aaron Forsberg is the Director of the OESPI.  Mr. Forsberg is sued in his official capacity.

27.   Defendant, the Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury.  In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions programs of the United States.  The Department of the Treasury is located at 1500 Pennsylvania Avenue NW, Washington, D.C. 20220.

28.   Defendant Scott K. H. Bessent is the Secretary of the Treasury of the United States.  Secretary Bessent is sued in his official capacity.

10

29.    Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Avenue NW-Annex, Washington D.C. 20220.   OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities.  Further, under 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively, it is the sole administrative agency responsible for the reconsideration and delisting process.

30.    Defendant Bradley T. Smith is the Director of OFAC.  Director Smith is sued in his official capacity.

## **FACTUAL ALLEGATIONS**

**A.    The Origins of the IEEPA and the Executive's Constitutional and Statutory Authority**

31.    The International Emergency Economic Powers Act ("IEEPA") specifies its general policy and purpose — "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a).

32.    Pursuant to IEEPA, the President may regulate, direct, or prohibit transactions involving property in which a foreign person has an interest and may block property subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1).

33.    Executive Orders may provide detailed instructions to federal agencies regarding the implementation and enforcement of sanctions programs authorized under

11

IEEPA. Absent statutory authorization and implementing Executive Orders, Defendant Office of Foreign Assets Control ("OFAC") lacks authority to designate individuals or entities or to maintain the List of Specially Designated Nationals and Blocked Persons ("SDN List").

34. On April 15, 2021, the President issued Executive Order 14024 ("E.O. 14024"), declaring a national emergency with respect to specified harmful foreign activities of the Russian Federation.

35. Section 1(a)(iii)(C) of E.O. 14024 authorizes the designation of persons determined to be "leaders, officials, senior executive officers, or members of the board of directors" of an entity whose property and interests in property are blocked pursuant to the Order.

36. E.O. 14024 provides that "[t]he Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions … as may be necessary to carry out the purposes of this order." The Order further provides that "[t]he Secretary of the Treasury may, consistent with applicable law, redelegate any of the functions within the Department of the Treasury."

37. OFAC, a component of the Department of the Treasury, administers and enforces the sanctions program implemented pursuant to E.O. 14024 and maintains the SDN List.

38. OFAC's regulations provide a mechanism by which a designated person may seek administrative reconsideration of designation by asserting that "the circumstances resulting in the sanction no longer apply." 31 C.F.R. § 501.807(a).

**B.      U.S. Sanctions on the Russian Financial Services Sector**

39.      On February 24, 2022, in response to Russia's actions in Ukraine, the United States imposed sweeping sanctions on numerous Russian individuals and entities pursuant to E.O. 14024.

40.      On February 24, 2022, Public Joint Stock Company Bank Financial Corporation Otkritie ("Bank Otkritie") was designated pursuant to E.O. 14024 for operating in the financial services sector of the Russian Federation economy and for being owned or controlled by, or acting on behalf of, the Government of the Russian Federation.

41.      On April 20, 2022, Plaintiff and other current and former board members of Bank Otkritie were designated pursuant to Section 1(a)(iii)(C) of E.O. 14024 for being "leaders, officials, senior executive officers, or members of the board of directors" of a blocked entity.

42.      Plaintiff was not designated for engaging in corruption, materially assisting the Government of the Russian Federation, facilitating sanctions evasion, financing unlawful activity, or influencing Russian government policy.  Rather, she was designated solely based on her service as a member of the Executive (Management) Board of Bank Otkritie.

**C.      Plaintiff's Background and Professional History**

43.      Plaintiff is a career banking professional whose experience has focused primarily on small- and medium-sized enterprise ("SME") banking, digital transformation, and financial inclusion. Her professional experience includes tenures at international institutions in Russia, such as KMB Bank, the European Bank for Reconstruction and Development ("EBRD"), and the Soros Foundation. These roles were focused on the

implementation of private property development programs and the expansion of SME lending within the Russian Federation.

44.     Plaintiff began her career in the mid-1990s in regional banking roles and later held senior management positions in Russia's private banking sector.

45.     Throughout her career, Plaintiff's work centered on expanding access to financing for entrepreneurs and small businesses, modernizing banking operations, and promoting financial inclusion initiatives. Plaintiff's work specifically prioritized the economic empowerment of women and the advancement of female entrepreneurship. She was recognized by World Business magazine as one of the "International 35 Women Under 35."

46.     Plaintiff has not held public office, has not served in any governmental role, and has not been employed by the Government of the Russian Federation.

47.     Plaintiff has never been accused of corruption, criminal conduct, sanctions evasion, or materially assisting unlawful activity.

48.     Plaintiff has not been identified as a political figure, policymaker, or individual exercising influence over Russian government decision-making.

49.     Plaintiff joined Bank Otkritie's Executive (Management) Board in 2017. During her time in that capacity, her responsibilities were focused on SME banking operations, product development, and digital transformation initiatives.  Neither the Bank's core business operations nor the Plaintiff's specific role involved the defense, energy, or military sectors. Furthermore, the Bank operated as a commercial institution, and neither the entity nor the Plaintiff were involved in any policymaking functions for the Russian government.

50.     Plaintiff's designation on April 20, 2022 was based exclusively on her status as a member of the Executive Board of Bank Otkritie. The designation did not allege that Plaintiff engaged in sanctionable conduct independent of her board membership.

51.     Plaintiff's key focus in the months following Bank Otkritie's designation was winding down existing projects in the SME sector, which fell within the scope of her job responsibilities as prescribed by her employment contract.

52.     Plaintiff resigned from Bank Otkritie effective December 31, 2022.  Her departure was documented in writing and publicly reported.

53.     Since her resignation more than three years ago, Plaintiff has not served on the board of any financial institution and has not reentered the Russian financial services sector.

**F.     Similarly Situated Individuals Removed from the SDN List**

54.     Defendants have removed from the SDN List multiple individuals designated under E.O. 14024 on the basis of board membership at designated Russian financial institutions after those individuals resigned and petitioned for reconsideration.

55.     Plaintiff's former Bank Otkritie colleagues Mikhail Zadornov, Anatoly Karachinskiy, Elena Titova, Andrey Golikov, and Paul Goldfinch — all former supervisory members of Bank Otkritie who resigned from their positions — have been removed from the SDN List following their resignations from their respective positions at the bank.

56.     In addition, other former board members of sanctioned Russian banks designated under E.O. 14024 – including Alexey Fisun, Natalya Alymova, and Alexey Panferov – were subsequently removed from the SDN List after resigning their positions and filing petitions for reconsideration.

15

57.    Plaintiff is materially indistinguishable from these individuals with respect to the basis for designation and subsequent remediation (*i.e.,* resignation from the board). Despite these materially similar circumstances, Plaintiff remains designated.

**G.    Plaintiff's Challenge to Her Designation and Defendant's Failure to Adjudicate**

58.    On May 23, 2025, Plaintiff, through counsel, submitted a petition for administrative reconsideration to OFAC pursuant to 31 C.F.R. § 501.807.  The petition included documentary evidence establishing that Plaintiff resigned from Bank Otkritie effective December 31, 2022, including a copy of the bank's written confirmation of the termination of her employment, an English translation thereof, and publicly available news articles and official press releases reporting her resignation from the Bank's Executive (Management) Board.  Plaintiff received an acknowledgment of her petition from OFAC on May 27, 2025.

59.    On June 17, 2025, Plaintiff received a questionnaire from the State Department.  This questionnaire asked for information, much of which Plaintiff has already provided in her delisting petition that was filed with OFAC and the Department of State. Nonetheless, Plaintiff promptly responded to all questions and provided all requested documentation on August 19, 2025.

60.    The State Department confirmed receipt of her responses to their questionnaire on August 19, 2025, but noted an issue accessing the attached documents.  Ten minutes later, Plaintiff responded with a new compressed file.  The State Department confirmed receipt of the newly compressed questionnaire file the following day, August 20, 2025.

61.     Plaintiff followed up by email on October 17, 2025, noting the 60-day mark since Plaintiff's last response to the questionnaire was approaching. Plaintiff received no response to this email.

62.     Plaintiff followed up with another email on November 21, 2025, noting that it had been over 90 days since the submission of her response and offered to answer any follow-up questions or questionnaires. The same day, the State Department responded, "Please know that we are working diligently to reach a decision concerning your Request for Reconsideration.  However, we are not able to provide a time estimate for the completion of our review.  We will let you know if we have further questions or when we complete our adjudication of the request."

63.     On December 8, 2025, Plaintiff again emailed the Department of State and requested an update.  The Department of State responded on December 16, 2025, stating, "Please know that we are working diligently to reach a decision concerning the Request for Reconsideration.  However, we are not able to provide a time estimate for the completion of our review.  We will let you know if we have further questions or when we complete our adjudication of the request."

64.     Five months since this last exchange of emails, and nearly a year after Plaintiff submitted its response to Defendants' questionnaire, Plaintiff has received no update or additional requests for information.

65.     Throughout the correspondence between Plaintiff and the Defendants, OFAC has been silent, even though all emails regarding Plaintiff's delisting have been directed towards that agency.  Except for the initial acknowledgment e-mail by OFAC dated May 27,

17

2025, all responses have come from the State Department's OESPI, and in each email, that agency has indicated that it is evaluating Plaintiff's petition, not OFAC.

66.     There is nothing further that Plaintiff can do to demonstrate "improved behavior" when the basis of her sanction's designation is no longer operative.  Plaintiff has patiently waited for OFAC and/or the Department of State to provide some kind of substantive response and offered to provide any additional information that the agency may require to make a determination on her delisting petition.

67.     Plaintiff has no other recourse than to request this Court for declaratory and injunctive relief to address Defendants' continuing designation, as well as to prompt agency action to remedy the "pocket veto" that Defendants have employed in delaying adjudication of Plaintiff's petition to be removed from the SDN List.  A delayed adjudication is virtually indistinguishable from punishment, directly contravening OFAC's and the Department of State's own policy as set forth on their respective websites.

**LEGAL CLAIMS**

**COUNT I**

**DEFENDANTS' TREATMENT OF PLAINTIFF'S PETITION FOR REMOVAL IS IN A MANNER DISPARATE TO SIMILARLY SITUATED PARTIES IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

68.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

69.     The APA empowers reviewing courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

18

70.     The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

71.     Under binding precedent in this Circuit, administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.

72.     Defendants have treated at least ten other similarly situated petitioners who were designated pursuant to E.O. 14024 differently than Plaintiff by granting their petitions for removal because the predicate basis for designation no longer applied.  By contrast, Plaintiff has not received a determination on her petition despite Plaintiff having proved with documentary evidence that she resigned from Bank Otkritie over three years ago. Specifically, Defendants had information regarding Plaintiff's resignation as soon as she submitted her petition for removal from the SDN List.

73.     Defendants' actions have resulted in an impermissible material difference in how Plaintiff's petition is being considered under the same regulatory process found at 31 C.F.R. § 501.807 when compared to such similarly situated petitioners.  Defendants have failed to provide a legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law.

74.     Further, Defendants are treating Plaintiff differently than similarly situated parties by failing to adjudicate this matter in a timely manner.  Plaintiff will continue to suffer the consequences of her designation so long as Defendants continue to refuse to

adjudicate Plaintiff's delisting petition and treat Plaintiff differently than similarly situated parties.

## COUNT II

## DEFENDANTS' TREATMENT OF PLAINTIFF'S PETITION FOR REMOVAL CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

75.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

76.    The APA requires agencies to "conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b). Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).

77.    The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

78.    Defendants' failure to render a decision on Plaintiff's delisting petition for nearly one year, despite having indisputable evidence in their possession that Plaintiff no longer meets the legal criteria for designation under E.O. 14024 constitutes unreasonable delay under the APA.

## COUNT III

### DEFENDANTS' FAILURE TO REMOVE PLAINTIFF FROM THE SDN LIST DESPITE THERE BEING NO FACTUAL BASIS FOR HER CONTINUED DESIGNATION IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

79. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

80. The APA empowers reviewing courts to set aside agency action that is, inter alia, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

81. The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

82. An agency action is arbitrary and capricious if it has relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.

83. Defendants' failure to act on Plaintiff's delisting petition, despite having documentary evidence in their possession that Plaintiff no longer meets the criteria for designation under E.O. 14024, constitutes agency action that entirely failed to consider an important aspect of the problem, or offer an explanation for its decision that runs counter to the evidence before the agency, and therefore is arbitrary and capricious in violation of the APA.

21

## <u>RELIEF REQUESTED</u>

Wherefore, Plaintiff respectfully requests that this Court:

A.       Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of her name from OFAC's SDN List;

B.       Order Defendants to issue a written decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why her petition has been treated differently than those of similarly situated petitioners;

C.       Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and/or

D.       Such other and further relief as the Court may deem proper.


Dated: April 24, 2026

<div style="margin-left:40%">

Respectfully submitted,

/s/ Amir H. Toossi
Amir H. Toossi
Akrivis Law Group PLLC
747 Third Avenue, 32nd Floor
New York, NY 10022
Telephone: (347) 949-0548
Email: atoossi@akrivislaw.com
NY State Bar No. 4236071

/s/ Farhad S. Alavi
Farhad Alavi
Akrivis Law Group PLLC
5335 Wisconsin Avenue, Suite 440
Washington, D.C. 20015
Telephone: (202) 730-1271
Email: falavi@akrivislaw.com
D.C. Bar No. 500560

*Counsel for Plaintiff Nadiya Cherkasova*

</div>